## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ABDUL HAKIM ABDUL KARIM AMIN BUKHARI,** Petitioner, | : : : : : | **CIVIL ACTION** **(Habeas Corpus)** |
| *v.* | : : | |
| **GEORGE W. BUSH,** *et al.*, Respondents. | : : : : : | **ORAL ARGUMENT REQUESTED** No. 1:05-cv-01241-RMC |

### PETITIONER'S MOTION FOR FACTUAL RETURNS AND MEDICAL INFORMATION AND OBJECTION TO RESPONDENTS' MOTION TO STAY PROCEEDINGS

### Procedural History

Petitioner, who is a prisoner at Guantanamo Bay, sent a *pro se* request for habeas relief to the Court, which was docketed on June 22, 2005. On July 18, 2005, the government filed a *Motion to Stay Proceedings Pending Related Appeals and for Coordination ("Stay Motion")*. Undersigned counsel was appointed to represent Petitioner on October 5, and on November 2, 2005, counsel filed a *Petition for a Writ of Habeas Corpus* on behalf of Petitioner. On November 7, 2005, the government filed an *Amended Motion to Stay Proceedings Pending Related Appeals ("Amended Stay Motion")*. Petitioner hereby responds to that motion and requests additional relief.

### The Protective Order

Petitioner and Respondents agree to the entry of the protective orders previously entered in other Guantantamo detainee cases. The Government has attached these orders to its *Amended*

*Stay Motion* as Exhibits A through C.  Petitioner requests that the Court enter these orders

forthwith.  This would allow counsel to send legal mail to Mr. Bukhari and to begin to arrange to

visit him at Guantanamo.[1]

### Respondents' Motion for Stay

The government seeks a stay of all proceedings pending the resolution of all appeals in In

re Guantanamo Bay Detainee Cases, 355 F.Supp.2d 443 (D.D.C. 2005), petition for interlocutory

appeal granted, No. 05-8003 (D.C. Cir. 10 March 2005) and Khalid v. Bush, 355 F.Supp.2d 311

(D.D.C. 2005), appeals docketed, Nos. 05-5062, 05-5063 (D.C. Cir. 2 March 2005).  The

government argues that because the "core issues" in this case are at issue in these appeals, "[i]t

makes no sense for these cases to proceed in advance of resolution of the appeals; further

proceedings would require the expenditure of judicial and other resources that may be avoided as

a result of the appeals, and, in any event, such proceedings very likely would have to be revisited

or relitigated when the Court of Appeals provides guidance regarding handling of the claims in

these Guantanamo Bay detainee cases."  *Stay Motion* at 3.  See also *Amended Stay Motion* at 1-2.

A party seeking a stay of judicial proceedings "must make out a clear case of hardship or

inequity in being required to go forward, if there is even a fair possibility that the stay for which

he prays will work damage to someone else."  Landis v. North American, 299 U.S. 248, 255

(1936); accord, Dellinger v. Mitchell, 442 F.2d 782, 786 (D.C. Cir. 1971).  Thus "in deciding to

stay proceedings indefinitely, a trial court must first identify a pressing need for the stay" and

"then balance interests favoring a stay against interests frustrated by the action."  Cherokee

Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997).  See also Klein v.

---

[1]Counsel have begun the process of seeking security clearances as provided for in the
protective orders.

Adams & Peck, 436 F.2d 337, 339 (2nd Cir. 1971) ("The right to proceed in court should not be denied except under the most extreme circumstances.").

Here the government has made no showing of hardship. And the granting of a stay prejudices petitioner. Any balancing of harms must begin with the recognition that Petitioner has been incarcerated virtually incommunicado for over three years without charge, access to counsel or any meaningful due process protections. Further, the government has recently released military and other federal agency documents confirming reports from released detainees and news organizations that Guantanamo detainees have been subject to systematic physical and mental abuse that can only be described as torture. These documents were released under a court order entered in litigation brought under the Freedom of Information Act by civil rights, humanitarian and veterans' organizations. See American Civil Liberties Union v. Department of Defense, No. 04-CV-4151 (AKH) (S.D.N.Y.). The documents can be viewed at http://action.aclu.org/torturefoia/.

To grant a stay would ignore the Supreme Court's mandate to "consider in the first instance the merits of petitioners' claims." Rasul v. Bush, 124 S. Ct. 2686, 2699 (2004). It also would be wholly inconsistent with a long line of cases emphasizing that habeas cases must be handled expeditiously. Preiser v. Rodriguez, 411 U.S. 475, 496 (1973) ("the federal habeas statute provides for a swift, flexible, and summary determination."); Carafas v. LaValle, 391 U.S. 234, 238 (1968) (habeas review is designed "to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person"); Stack v. Boyle, 342 U.S. 1, 4 (1952) ("Relief in this type of case must be speedy if it is to be effective.").

Nor is there any practical reason to wait for the decision of the court of appeals. In Rasul the Supreme Court held that federal district courts have jurisdiction to hear the habeas corpus

3

claims of Guantanamo detainees, noting that their allegations "unquestionably describe custody in violation of the Constitution or laws or treaties of the United States." 124 S. Ct. at 2698, note 15 (internal quotations omitted). The government's contention on appeal that the detainees have no rights whatsoever will not succeed.

### The Duration of Any Stay

If the Court does impose a stay, at the very least the Court should limit the duration by directing that the stay will only extend to the date the court of appeals decides the pending appeals. After the ruling of the circuit court, the government will have 90 days to petition for a writ of certiorari, and there is no time limit on the Supreme Court's consideration of such a petition. At the very earliest, the Supreme Court would consider the cases during the present term. Even assuming expedited briefing and consideration, the Supreme Court would not likely issue a decision until sometime in 2007. In the meantime Petitioner will have entered at least his fifth year of illegal detention. In Landis the Supreme Court held that a stay may not be "immoderate in extent" or "oppressive in its consequences." 299 U.S. at 256. Given the conditions of Mr. Bukhari's years of incarceration and the potentially indefinite duration, it is difficult to conceive of a delay more immoderate or consequences more oppressive than his having to wait at least another full year to proceed with his habeas litigation. In Landis the Supreme Court vacated a stay in a securities case intended to last through intermediate and Supreme Court appeals, holding that "relief so drastic and unusual overpasses the limits of any reasonable need ..." 299 U.S. at 257. See also Dellinger, 442 F.2d at 785-88. Surely here, where liberty interests are at stake, the lengthy stay requested by the government is relief even more drastic.

**Factual Returns and CSRT**

Mr. Bukhari has petitioned this Court for habeas relief.  He is held without charges and has alleged that he is not an enemy combatant and that there is no justifiable reason for his detention.  He is entitled to be informed of the nature of the government's allegations against him under the Fifth and Sixth Amendments to the United States Constitution.

Respondents contend that to require the submission of factual returns would "burden[] the government's resources and risk[] the inadvertent disclosure of classified information." *Amended Stay Motion* at 12.  First, there is no risk of disclosure of classified information. Counsel are in the process of attaining security clearances and have every intention of fully abiding by the protective orders.

Second, the government indicates that the typical factual return in these cases "has consisted of the record of proceedings before the Combat Status Review Tribunals." *Id.* at 11, n. 9.  Thus, the government concedes that it has already organized the facts behind the charges. Indeed, as a result of a successful Associated Press Freedom of Information Act case, the government was required to release a sampling of unclassified CSRT files for about 60 detainees, which can be viewed at http://wid.ap.org/documents/detainees/list.html. (The files typically have name and country redacted.)[2]  It makes no sense for the government to produce files, even in redacted form, to the Associated Press for viewing by the entire world and not produce the same file to a petitioner's attorney.  Without the ability to review the CSRT file, the undersigned will have great difficulty preparing the case or discussing the facts with his client.

---

[2]A cursory review of any of these files shows that the government already has well organized factual files that it can produce quickly.

The Court should order the government to produce Petitioner's CSRT file to his attorneys subject to all the provisions of the protective orders.

At least nine judges of this bench, including this Court as well as Judges Bates, Friedman, Huvelle, Kessler, Roberts, Sullivan, Urbina and Walton, have ordered the government to make factual returns. In <u>Battayav v. Bush</u>, 05714 docket number 12, page 3, Judge Walton considered but rejected the same argument the government makes here -- that the submission of factual returns is burdensome and risks the inadvertent disclosure of classified information -- because the factual returns were necessary for petitioners' counsel to effectively represent them even in an initial meeting. Judge Bates made the same point in <u>Al-Anazi v. Bush</u>, 05-345, 2005 WL 1119602, at page 10, docket number 21. Judge Urbina rejected the same arguments the government makes here:

> As to the government's concerns regarding classified information, the protective orders that counsel anticipates will be entered in this case will guard against any inadvertent disclosures. Finally, the government's generic references to the expenditures of its resources and logistical burden does not persuade the court to delay ordering the return; the court is confident that the government can handle this task.

*Qayed v. Bush*, 05-454, docket number 5, page 2. <u>See also</u>, Judge Kessler's order in *Al-Adahi v. Bush*, 05-301, docket number 26, page2 ; Judge Friedman's order in *Al-Wazan v. Bush*, 05-329, docket number 37, page 1; Judge Huvelle's order in *Kurnaz v. Bush*, 04-1135, docket number 12, page 5; Judge Robert's order in *El-Banni v. Bush*, 04-1144, docket number 10, page 7; and Judge Sullivan's order in *Errachidi v. Bush*, 05-640, docket entry of 21 April 2005.

Judge Sullivan ordered the government to file its factual return within seven days. Judge Roberts ordered the government to file a factual return within 30 days after entry of the protective order. Judges Urbina, Huvelle, Friedman and Kessler allowed for 90 days. Judges

Walton and Bates allowed for 120 days.  On two occasions when the government was ordered to

provide factual returns within seven days it was able to comply without issue.  See *Errachidi v.*

*Bush*, 05-640, docket numbers 15 and 16 (Judge Sullivan on 21 April 2005 ordered the

government to make its return within seven days and the government did so on 26 April 2005)

and *Abdullah v. Bush*, 05-23, docket numbers 24-26 (Judge Roberts on 8 April 2005 required the

government to file factual returns by 14 April 2005 and the government did so on 15 April

2005).  Petitioner respectfully requests that this Court require that factual returns be filed within

30 days after entry of the protective orders.[3]

   Even if the Court imposes a stay in the proceedings pending the outcome of In re

Guantanamo and Khalid, as requested by the government, the Court should still order that the

factual returns be provided as it did in *Sadkhan v. Bush*, 05-1487 (RMC), November 4, 2005

order attached as Exhibit A.  The returns will be of great assistance to counsel in meeting with

Petitioner, which the government concedes is within his rights.  See *Amended Stay Motion* at 2

Moreover, denying Petitioner's counsel access to factual returns also puts Petitioner in the dark

in regard to his argument against the imposition of the stay.  For example, the government

submits that the appeals in the pending cases "will address the core issues" in Petitioner's case.

*Amended Stay Motion* at 1.  However, all of the Petitioners in Khalid and most of the Petitioners

in In re Guantanamo were captured outside Afghanistan.  See Khalid at 316 ("petitioners are

non-resident aliens captured outside Afghanistan"); In re Guantanamo at 447 ("many of these

individuals may never have been close to an actual battlefield ...").  That fact was relied upon by

---

[3]Since counsel are still in the process of obtaining security clearances, counsel requests that respondents submit factual returns to the secure facility, where counsel can review the documents immediately upon receiving clearance.

each of the district court judges in determining the applicability of the protections of certain constitutional, procedural and international law to the detainees. On the other hand, it appears that Petitioner was taken into custody in Afghanistan. The government's factual returns would either confirm or deny this. The Court would then be in a position to determine whether Petitioner's case is distinguishable from <u>Khalid</u> and/or <u>In re Guantanamo</u> or if those cases would be more likely to control the outcome of the instant litigation.

### Motion to Compel Disclosure of Medical Condition of Petitioner

Because of press accounts of hunger strikes currently underway and Guantanamo Bay, counsel, on October 31, 2005, requested information from the government regarding whether or not Petitioner is participating and any information on his medical condition. <u>See</u> Exhibit B, attached. On November 4, counsel for the government responded by letter that they would not disclose such information. <u>See</u> Exhibit C, attached.[4] Counsel hereby requests that the Court order the government to do so.

The situation at Guantanamo Bay is dire. There is a hunger strike in progress that could result in the deaths of detainees. <u>See</u> <u>e.g.</u> *Lawyers Seek Improved Conditions for Suicidal Detainee*, Washington Post, November 5, 2005, at A08 ("two dozed detainees are being force-fed at the facility because of a lengthy hunger strike protesting conditions and treatment at Guantanamo Bay"); *Three Bahrainis Released from Guantanamo*, New York Times, November 5, 2005 ("nearly 30 prisoners have been on hunger strike since August to protest their confinement"); *Guantanamo Desperation Seen in Suicide Attempts*, Washington Post, November

---

[4]The letter to counsel in response to the request for medical information was regarding undersigned counsel's client in *Tohirjanovich v. Bush*, 05-00994 (JDB). The letter requesting information regarding that client was identical to Exhibit B. Counsel assumes that the government's response regarding Petitioner is the same as that regarding Tohirjanovich.

1, 2005, at A01 ("Two dozen Guantanamo Bay detainees are currently being force-fed in response to a lengthy hunger strike...").

In a recently unclassified declaration, an attorney for a detainee described her observations from a recent visit to Guantanamo. *Supplemental Declaration by Julia Tarver, Esq.* (filed in <u>Al Joudi v. Bush</u>, No. 05-0301 (GK), D.C. District Court, on October 13, 2005), Exhibit D, attached. Tarver describes the deteriorated condition of her clients and notes their descriptions of the violent force feeding to which they were subject.

The government will not permit counsel to have access to Petitioner until the security clearance process is completed. While counsel has begun that process, it will take many weeks before it is complete and counsel will have the opportunity to meet with Petitioner at Guantanamo Bay. In the meantime, Petitioner may be dying, or his health may be in serious jeopardy. Counsel is merely requesting basic medical information regarding Petitioner's condition and a simple yes or no answer to whether he is participating in the hunger strike. Indeed, the medical information will be crucial to counsel in determining how quickly and urgently counsel should arrange to see Petitioner at Guantanamo once the security clearances are received. Surely, such a request does not overly burden the government.

**CONCLUSION**

For the reasons discussed above, the Court should enter the protective orders, deny the Respondents' motion for a stay, order the government to provide factual returns within thirty days of the entry of the protective order and order the government to provide medical information regarding Petitioner forthwith.

Respectfully submitted,

/s/Billy H. Nolas
Billy H. Nolas (DC 399275; PA 83177)
Assistant Federal Defender
Maureen Rowley (PA 33020)
Chief Federal Defender
David McColgin (PA 42963)
Supervising Appellate Assistant Federal Defender
Cristi Charpentier (PA 62055)
Shawn Nolan (PA 56535)
Mark Wilson (PA 26887)
Assistant Federal Defenders
Federal Community Defender Office for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520; (215) 928-1100

Dated:   November 8, 2005

Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument has been served

via the e-filing system on the following counsel of record for respondents:


Ms. Preeya M. Noronha
US DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Room 7226
Washington, DC 20529-0001


/s/Billy H. Nolas
Billy H. Nolas


Dated:  November 8, 2005