IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ABDUL HAKIM ABDUL KARIM, AMIN BUKHARI, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-1241 (RMC) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) ) *)* ) | |
| Respondents. | ) ) ) | |

**RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF ITS
AMENDED MOTION TO STAY PROCEEDINGS PENDING
RELATED APPEALS AND FOR CONTINUED COORDINATION AND
OPPOSITION TO PETITIONER'S MOTION FOR FACTUAL RETURNS AND
MEDICAL INFORMATION**

Respondents hereby submit this reply memorandum in support of their motion to stay

proceedings pending related appeals and for continued coordination in the above-captioned case

and its opposition to petitioners' motion for factual returns and medical information.

**ARGUMENT**

**I.    The Court Has the Authority to Grant a Stay at This Stage of the Proceedings.**

As a preliminary matter, there is nothing in the habeas statute that constrains the Court's

broad authority to provide for an orderly schedule and otherwise manage habeas proceedings to

further an efficient expenditure of litigation resources.  Indeed, pursuant to the Rules Governing

Section 2254 Cases in the United States District Courts (the "2254 Rules"),[1] a court may extend

---

[1]  The 2254 Rules are applicable to petitions for writ of habeas corpus other than those
arising under 28 U.S.C. § 2254, such as the petitions in these cases.  See 2254 Rule 1(b) ("In
applications for habeas corpus in cases not covered by subdivision (a) [involving persons in state

the deadline for responses to habeas petitions beyond the time limits set forth in 28 U.S.C.

§ 2243 — the 2254 Rules do not indicate a fixed deadline for responding to habeas petitions, and

they supersede the time limits set forth in 28 U.S.C. § 2243.  Rule 4 provides that the judge shall

"order the respondent to file an answer, motion or other response within a fixed time, or to take

other action the judge may order."  See also Bleitner v. Welborn, 15 F.3d 652, 653-54 (7th Cir.

1994) ("[T]he Rules Governing Section 2254 Cases in the United States District Courts, which

have the force of a superseding statute, 28 U.S.C. § 2072(b) . . . loosened up the deadline for

responses.  Rule 4 leaves it up to the district court to fix the deadline."); Castillo v. Pratt, 162 F.

Supp. 2d 575, 577 (N.D. Tex. 2001) (denying § 2241 petitioner's request for expedited

consideration because "[t]he discretion afforded by Rule 4 of the 2254 Rules "prevails" over the

strict time limits of 28 U.S.C. § 2243"); Kramer v. Jenkins, 108 F.R.D. 429, 431 (N.D. Ill. 1985)

(denying § 2241 petitioner's motion for correction of court scheduling order because "in the

conflict between Rule 4 of the 2254 Rules and 28 U.S.C. § 2243, Rule 4 must prevail").

Furthermore, the 2254 Rules have provided courts with the discretion to consider the burdens

involved in filing responses to habeas petitions when implementing case management schedules.

---

custody], these rules may be applied at the discretion of the United States district court."); Castillo v. Pratt, 162 F. Supp. 2d 575, 577 (N.D. Tex. 2001) ("The Supreme Court intended the 2254 Rules to apply to petitions filed under § 2241."); Ukawabutu v. Morton, 997 F. Supp. 605, 608 n.2 (D.N.J. 1998) (The 2254 Rules "apply to petitions filed pursuant to 28 U.S.C. § 2241 as well as 28 U.S.C. § 2254."); Wyant v. Edwards, 952 F. Supp. 348, 352 (S.D. W.Va. 1997) ("[T]he Court has concluded that the § 2254 Rules were intended to apply to § 2241 cases . . ."); Hudson v. Helman, 948 F. Supp. 810, 811 (C.D. Ill. 1996) ("Thus, while the instant Petition is brought pursuant to 28 U.S.C. § 2241, not 28 U.S.C. § 2254, and involves a prisoner in federal custody, the Rules Governing Section 2254 Cases may still be applied here."); Kramer v. Jenkins, 108 F.R.D. 429, 431 (N.D. Ill. 1985) ("[A]lthough [petitioner's] petition is under section 2241, and not section 2254, the court may properly apply Rule 4 of the 2254 Rules."). Petitioners have presented no authority to the contrary.

See Advisory Committee Notes to 2254 Rules; see also Lonchar v. Thomas, 517 U.S. 314, 325

(1996) (stating that the 2254 Rules confer "ample discretionary authority" on district courts "to

tailor the proceedings" in habeas cases).  Thus, this Court has the authority to grant a stay of

proceedings at this juncture.  See Landis v. North American Co., 299 U.S. 248, 254-55 (1936)

("The power to stay proceedings is incidental to the power inherent in every court to control the

disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

for litigants."); id. at 256 (noting propriety of stay in cases "of extraordinary public moment").

## II.     A Stay of Proceedings Is Appropriate.

There is no dispute that the resolution of the appeals of the decisions of Judges Leon and

Green in Khalid v. Bush, Nos. 04-CV-1142 (RJL), 355 F. Supp.2d 311 (D.D.C. 2005), appeals

docketed, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and In re Guantanamo Detainee

Cases, 355 F. Supp.2d 443 (D.D.C. 2005), petition for interlocutory appeal granted, No. 05-8003

(D.C. Cir. Mar. 10, 2005), will address the core issues in these important cases and, thus,

determine how these cases should proceed, if at all.[2]  Thus, it would be a wasteful expenditure of

resources to proceed with litigation regarding the alleged rights of detainees at Guantanamo Bay

when the law governing any such rights is presently in dispute and will be resolved by the Court

of Appeals on an expedited basis.  Several Judges of this Court, including Your Honor, have

already recognized as much, and generally stayed proceedings in Guantanamo detainee habeas

cases pending before them.[3]  Consistent with this approach, proceedings in the above-

---

[2] Oral Argument before the D.C. Circuit in these cases was held on September 8, 2005.

[3] See, e.g. Deghayes v. Bush, No. 04-CV-2215 (RMC) (dkt. no. 7); Saib v. Bush, 05-
CV-1353 (RMC); Mangut v. Bush, No. 05-CV-1008 (JDB) (dkt. no. 2); Salaam v. Bush, No. 05-
CV-1013 (JDB) (dkt. no. 2);  Al Mohammed v. Bush, No. 04-CV-0247 (HHK) (dkt. no. 18); El-

captioned cases should also be stayed pending the resolution of the appeals of Khalid, et al. and

In re Guantanamo Detainee Cases.[4]

Petitioner's dismissive treatment of the needless expenditure of judicial and litigation

resources that would result from additional proceedings in these cases, including the submission

of factual returns, ignores the cascade effect that would follow from not staying the cases.  See

Pet's Opp. at 2-3.  Presently, there are more than160 habeas cases pending on behalf of well over

250 detainees at Guantanamo Bay; the majority of those cases and petitioners were not subject to

---

Mashad v. Bush, No. 05-CV-0270 (JR) (dkt. no. 29); Al-Adahi v. Bush, No. 05-CV-0280 (GK)
(dkt. no. 35); Al Joudi v. Bush, No. 05-CV-0301 (GK) (dkt. no. 26); Al-Wazan v. Bush, No. 05-
CV-0329 (PLF) (dkt. no. 15); Al-Anazi v. Bush, No. 05-CV-0345 (JDB) (dkt. no. 21); Alhami v.
Bush, No. 05-CV-0359 (GK) (dkt. no. 20); Ameziane v. Bush, No. 05-CV-0392 (ESH) (dkt. no.
12); Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 8); M.C. v. Bush, No. 05-CV-0430 (ESH)
(dkt. no. 10); Kabir v. Bush, No. 05-CV-0431 (RJL) (dkt. no. 10); Qayed v. Bush, No. 05-CV-
0454 (RMU) (dkt. no. 4); Al-Shihry v. Bush, No. 05-CV-0490 (PLF) (dkt. no. 14); Aziz v. Bush,
No. 05-CV-492 (JR) (dkt. no. 16); Qassim v. Bush, No. 05-CV-0497 (JR) (dkt. no. 14); Al-
Oshan v. Bush, No. 05-CV-0520 (RMU) (dkt. no. 12); Tumani v. Bush, No. 05-CV-0526 (RMU)
(dkt. no. 5); Al-Oshan v. Bush, No. 05-CV-0533 (RJL) (dkt. no. 6); Al Shamri v. Bush, No. 05-
CV-0551 (RWR) (dkt. no. 10); Salahi v. Bush, No. 05-CV-0569 (JR) (dkt. no. 8); Mammar v.
Bush, No. 05-CV-0573 (RJL) (dkt. no. 5); Al-Sharekh v. Bush, No. 05-CV-0583 (RJL) (dkt. no.
9); Magram v. Bush, No. 05-CV-0584 (CKK) (dkt. no. 9); Al Rashaidan v. Bush, No. 05-CV-
0586 (RWR) (dkt. no. 10); Mokit v. Bush, No. 05-CV-0621 (PLF) (dkt. no. 13); Al Daini v.
Bush, No. 05-CV-0634 (RWR) (dkt. no. 10); Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no.
16); Battayav v. Bush, No. 05-CV-0714 (RBW) (dkt. no. 12); Adem v. Bush, No. 05-CV-0723
(RWR) (dkt. no. 13); Hamlily v. Bush, No. 05-CV-0763 (JDB) (dkt. no. 10); Imran v. Bush, No.
05-CV-0764 (CKK) (dkt. no. 6); Hamamy v. Bush, No. 05-CV-0766 (RJL) (dkt. no. 6);
Hamoodah v. Bush, No. 05-CV-0795 (RJL) (dkt. no. 13); Rahmattullah v. Bush, No. 05-CV-
0878 (CKK) (dkt. no. 3); Nasrat v. Bush, No. 05-CV-0880 (ESH) (dkt. no. 4); Slahi v. Bush, No.
05-CV-0881 (RWR) (dkt. no. 5); Chaman v. Bush, No. 05-CV-0887 (RWR) (dkt. no. 7); Gul v.
Bush, No. 05-CV-0888 (CKK) (dkt. no. 3); Basardh v. Bush, No. 05-CV-0889 (ESH) (dkt. no.
4); Shaaban v. Bush, No. 05-CV-0892 (CKK) (dkt. no. 3); Tohirjanovich v. Bush, No. 05-CV-
0994 (JDB) (dkt. no. 4); Al-Khalaqi v. Bush, No. 05-CV-0999 (RBW) (dkt. no. 3); Kahn v.
Bush, No. 05-CV-1001 (ESH) (dkt. no. 3).

    [4]  The Court presumably would retain discretion to modify a stay of proceedings in a
particular case should circumstances arise truly warranting a lifting of the stay.

the decisions of Judges Leon and Green in Khalid,, et al. and In re Guantanamo Detainee Cases.

A decision to allow proceedings or submission of factual returns to go forward pending the

resolution of the appeals could precipitate a chain reaction — the scores of petitioners in other

pending and future  Guantanamo Bay detainee habeas cases, seeking parity of treatment, would

request the Court to allow additional proceedings or access to factual returns in those cases,

perhaps even by lifting or modifying stays that have already been entered.  This scenario is

exactly what Judge Green aimed to avoid when she denied petitioners' motion to reconsider her

order granting a stay pending appeal "in light of the substantial resources that would be expended

and the significant burdens that would be incurred should this litigation go forward."  See Order

Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in In re

Guantanamo Detainee Cases (Feb. 7, 2005) (Green, J.).  Indeed, any proceedings in these cases

that are permitted to go forward very likely would need to be revisited or relitigated, and may be

shown to have been altogether unnecessary, once the Court of Appeals provides guidance

regarding handling of the habeas claims of Guantanamo Bay detainees such as petitioners.  Thus,

in the interest of efficiency of judicial and litigation resources, as well as to minimize

administrative burdens, this Court should hold proceedings in the above-captioned cases in

abeyance pending the outcome of the appeals of the decisions by Judges of this Court in the other

Guantanamo Bay detainee cases.

        In contrast to the obvious and tangible burdens of proceeding with these cases while the

D.C. Circuit considers the appeals in In re Guantanamo Detainee Cases and Khalid, petitioner

points to nothing more than generalized, non-detainee-specific allegations, based on media

accounts, regarding alleged mistreatment of detainees, in the past, at Guantanamo Bay.  See Pets'

Opp. at 3.  Additionally, as explained previously, to the extent petitioner's have alleged concerns about such harm, the entry of a stay presumably would not deprive the Court of jurisdiction or discretion to modify the stay should circumstances arise truly warranting it.

In addition, petitioner unfairly dismisses the fact that "the law in this Circuit is unsettled." Al-Marri v. Bush, No. 04-CV-2035 (GK) (dkt. no. 26).  See Pets' Opp. at 4.  Petitioner argues the case should not be stayed at this time, or, that if a stay were entered, it should have a limited duration because the Guantanamo Bay cases might eventually be appealed to the United States Supreme Court after a decision in the D.C. Circuit Court of Appeals.  Id.  Despite that possibility, it simply makes no sense to proceed with the merits of the above-captioned cases when the core issues they present will be resolved by the Court of Appeals on an expedited basis and appeal to the Supreme Court is speculative at this juncture.

In the event the stay in this case is modified to allow the submission of factual returns, however, it could only be done pursuant to a coordinated and reasonable schedule, taking account of the fact that petitioners in all the recently filed cases are seeking factual returns and given the logistical burdens posed by an undertaking to produce returns in the cases.  Though the submission of factual returns should not go forward at all, a schedule for any such undertaking should be no more restrictive than is necessary; for example, a schedule for the rolling production of factual returns in these (and potentially other) cases over anything less than the next 10 to 12 weeks would be unreasonable.[5]  See e.g., Al-Anazi, No. 05-CV-0345 (JDB) (dkt.

_____

[5]  Petitioner's opposition seeks production of factual returns within 30 days of entry of the protective orders.  See, Opp. at 10.  That request, if granted, would result in an unnecessary logistical burden for respondents.  Each factual return must be obtained from the Department of Defense ("DoD"), and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable

no. 21) (imposing 120-day schedule);  Al-Joudi, No. 05-301 (GK) (dkt. no. 26) (imposing 90-day

schedule); Al-Adahi, No. 05-280 (GK) (dkt. no. 35) (imposing 90-day schedule); Ameziane, No.

05-CV-392 (ESH) (dkt. no. 12) (imposing 90-day schedule); Qayed, No. 05-CV-0454 (RMU)

(dkt. no. 5) (imposing 90-day schedule); Battayav, No. 05-CV-0714 (RBW) (dkt. no. 12)

(imposing 120-day schedule).

**III.    Petitioner Has Made No Particularized Showing Necessary to Compel Disclosure of His Medical Condition.**

Similar to petitioner's opposition to Respondents motion to stay, Petitioner attempts to

justify disclosure of information concerning whether he is participating in a hunger strike as well

as unspecified information on his medical condition, based merely upon generalized allegations

found in media accounts.  See Opp. at 8-9.  Petitioner has not made any particularized showing

that warrants the requested relief.

Petitioner's request is an improper attempt to take discovery that would also be unduly

burdensome and, in any event, is unnecessary.  A petitioner in a habeas case is not entitled to

discovery as a matter of right, but rather must first demonstrate good cause to conduct discovery

and obtain court permission.  See, e.g., Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999)

(explaining that "[a] habeas petitioner does not enjoy the presumptive entitlement to discovery of

a traditional civil litigant," and that "discovery is available only in the discretion of the court and

_____

statutes, regulations and Executive Orders.  Respondents must then prepare both public and classified versions of the factual returns for submission to the Court and counsel.  Further, submission of these returns will increase the risks of inadvertent or other disclosure or compromise of classified information.  Given that the D.C. Circuit will be considering the proper scope of these proceedings, including whether the claims of petitioner can be dismissed without reference to specific factual returns for petitioner, there is no justification to incur substantial burdens on government resources and increase the risk to national security by providing petitioner's counsel access to factual returns which may ultimately prove unnecessary.

for good cause shown."); Al Odah v. United States, 329 F. Supp. 2d 106, 107-08 (D.D.C. 2004)

(finding that Guantanamo detainee habeas petitioners must first seek leave of court before

conducting discovery and denying leave to conduct discovery); cf. Rule 6(a) of the Rules

Governing Section 2254 Cases (requiring leave of court for good cause shown before discovery

may be conducted).  Petitioner has not requested leave of court to take discovery, and the Court

should not permit them to evade this requirement simply by filing a motion to compel.

Furthermore, access to petitioner's medical records is not necessary, and petitioner cannot

demonstrate good cause for their production, because Guantanamo has carefully established

procedures in place for responding appropriately to hunger strikes that include protocols to

intervene to take medically appropriate measures to preserve detainees' lives and health.  As

noted in the sworn declaration of Major General Jay W. Hood, the Commander of Joint Task

Force-Guantanamo ("JTF-GTMO"), security forces at Guantanamo monitor each detainee's daily

intake of food and water.  Declaration of MG Jay W. Hood ("Hood Decl.") (attached as Exhibit

1) ¶ 5.  If medical personnel have reason to believe that the continuation of a hunger strike[6] might

endanger the health of a detainee, the detainee is admitted to the hospital.  Id. ¶ 6.  The detainee

is then encouraged to eat food and drink liquids and is counseled on the health risks associated

with refusing to do so.  Id.  If a detainee continues to refuse to eat or drink and a medical officer

determines that the detainee's health or life might be seriously threatened if treatment is not

 promptly administered, Major General Hood will authorize feeding by intravenous means or

---

[6] A detainee is deemed to have started a hunger strike after missing nine consecutive meals or after declining food and water for more than two days.  Hood Decl. ¶ 5.  A detainee is deemed to have ended a hunger strike after eating three consecutive meals.  The number of detainees engaged in a hunger strike at any given moment thus fluctuates frequently.

through a feeding tube.  Id. ¶ 8.  The protocols used in connection with involuntary feeding of

detainees is described in detail in the attached declaration of Dr. John S. Edmonson, previously

submitted in other Guantanamo Detainee cases.[7]  See Exhibit 2.  Dr. Edmonson's declaration

rebuts petitioner's counsel's allegations of "violent" involuntary feedings

  As Major General Hood and Dr. Edmonson have indicated, the Guantanamo staff

carefully monitors the daily intake of food and water for each detainee and will intervene, if

necessary, to take medically appropriate measures to preserve the lives and health of any

Guantanamo detainees participating in a hunger strike.  Accordingly, there is no need for

petitioners' counsel to access petitioners' medical or other related records, and their request

should be denied.

  On the basis of the extraordinary care being provided to the hunger strike detainees as

discussed in the declarations of Major General Hood and Dr. Edmonson, several other Judges

recently have denied preliminary injunction motions requesting relief related to detainee hunger.

Most recently, on November 17, 2005, relying on rulings on analogous requests in other detainee

cases, Judge Bates denied an omnibus motion seeking notice of petitioner-detainee involuntary

feeding and disclosure of medical records.  See, Al-Shabany v. Bush, No. 05-CV-2029 (JDB)

(dkt. no. 12) (denying motion consistent with the rulings in El-Banna v. Bush, Civil Action No.

04-1144 (D.D.C. Oct. 28, 2005) (consolidated motions) (memorandum and order) at 4 and

Hamlily, Civil Action No. 05-0763 (Oct. 3, 2005 order) (discussed below)).

---

  [7] Dr. Edmonson's declaration was submitted in rebuttal to the Tarver declaration in Al-Joudi v. Bush, No. 05-CV-0301, relied upon by petitioner in this case.

The rejection of similar or related requests for relief began on September 28, 2005, when Judge Oberdorfer denied motions for preliminary injunctions that were filed by petitioners in a number of cases.[8]  See El Banna v. Bush, --- F. Supp. 2d ---, 2005 WL 2375073 (D.D.C. 2005).  In denying the motions, which contained a number of extraordinary allegations,[9] Judge Oberdorfer concluded that petitioners had not "carried their burden of proving an imminent threat by respondents to the health and life of the hunger-striking movants."  Id. at *2.  Two other Judges adopted the reasoning of Judge Oberdorfer in denying identical motions for preliminary injunctions.  Hamlily v. Bush, Case No. 05-CV-763 (JDB), Order (Oct. 3, 2005) at 1 (dkt. no. 15) (denying an identical "motion for a preliminary injunction" concerning conditions of confinement and hunger strikes "[f]or the reasons stated by Judge Oberdorfer in his decision.");  Sliti v. Bush, Case No. 05-CV-429 (RJL), Order (Oct. 27, 2005) at 2 (dkt. no. 29) (denying nearly identical motions "[f]or the reasons set forth in Judge Oberdorfer's decision . . ..")

Additional Judges of this Court have denied other preliminary injunction motions that sought some of the same forms of relief that petitioner seeks in this case.  On October 5, 2005, Judge Urbina denied a motion to compel immediate visits to Guantanamo, telephonic access to detainees, medical updates, and discovery of medical records in five different cases.  See, e.g., Al-Oshan v. Bush, Case No. 05-CV-520 (RMU), Memorandum Order (dkt. no. 59).  On that

---

[8]  El-Banna v. Bush, Case No. 04-1144 (RWR), Deghayes v. Bush, Case No. 04-2215 (RMC), Aziz v. Bush, Case No. 05-492 (JR), Imran v. Bush, Case No. 05-764 (CKK), and Al Habashi v. Bush, Case No. 05-765.  The motions were assigned to Judge Oberdorfer through orders in the relevant cases transferring the motions to Judge Oberdorfer for decision.

[9]  The motions alleged, inter alia, that scorpions were present in detainees' food, that a mini-refrigerator was thrown at a detainee, that guard personnel engaged in various forms of violent mistreatment, and that medical personnel withheld treatment.  See, e.g., El-Banna v. Bush, Case No. 04-1144 (RWR) (dkt. no. 153).

same day, Judge Kennedy denied a similar motion for temporary restraining order finding court intervention into the Guantanamo staff's response to hunger strikes to be inappropriate. <u>Anam v. Bush</u>, Case No. 04-CV-1194 (HHK), Memorandum and Order at 3 (dkt. no. 26). And on three different occasions, Judge Kollar-Kotelly has denied motions seeking court intervention into the treatment and confinement conditions of hunger-striking detainees. <u>Al Odah v. Bush</u>, Case No. 02-CV-828 (CKK), Memorandum Opinion (Sept. 30, 2005) (dkt. no. 254) (denying temporary restraining order seeking judicial oversight of medical treatment of detainees, including periodic reports on medical conditions, access to detainee medical records, and telephone calls with detainees' family and counsel, finding that Guantanamo provides care "calibrated to preserve . . . [detainees'] life and health"); Memorandum Opinion (Nov. 8, 2005) (dkt. no. 274) (denying motion for preliminary injunction requesting same relief as prior temporary restraining order and finding that petitioners' failed to satisfy deliberate indifference test); Order (Nov. 10, 2005) (dkt. no. 276) (denying request for immediate medical evacuation of hunger-striking detainee, detailing extensive medical care provided to detainee, and concluding that petitioner's medical treatment at Guantanamo has not been marked by deliberate indifference).

Judge Kessler granted a request for production of medical records and denied other relief in <u>Al-Joudi v. Bush</u>, No. 05-CV-0301 (dkt. no. 51) (Oct. 26, 2005). That request, however, was supported by a declaration pertaining to the petitioners in that case. In any event, the <u>Al-Joudi</u> opinion, while acknowledging the Hood and Edmonson declarations, inexplicably disregarded them in granting the production of medical records in that case. Thus, the <u>Al-Joudi</u> opinion does not warrant granting petitioner's request for relief in this case, especially in light of the numerous decisions of other judges who have denied similar requests for relief.

8

As a final matter, an order requiring the production of petitioners' medical records would impose a tremendous burden on the Guantanamo staff, because each record would require review and, the burden of producing medical records should not be assessed merely within the confines of the petitioners in the present cases, because hundreds of other detainees are likely to request such records if the Court orders such relief here, thus multiplying the onus on the Guantanamo staff exponentially. As demonstrated, the relief requested by petitioners is unnecessary and, at the same time, would substantially injure the interests of respondents and therefore should be denied.

## **CONCLUSION**

For the reasons stated in respondents' amended motion to stay proceedings pending related appeals, and in this supporting reply memorandum, this Court should stay further proceedings in the above-captioned cases pending the appeals of Judge Leon's decision in Khalid, et al. and Judge Green's January 31, 2005 decision in In re Guantanamo Detainee Cases and deny petitioner's requested conditions on such a stay. Further, this Court should deny petitioner's motion to Compel Disclosure of Medical Condition of Petitioner.

Dated: November 21, 2005                    Respectfully submitted,

                                            PETER D. KEISLER
                                            Assistant Attorney General

                                            KENNETH L. WAINSTEIN
                                            United States Attorney

                                            DOUGLAS N. LETTER
                                            Terrorism Litigation Counsel

___/s/ James J. Schwartz_____
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ (D.C. Bar No. 468625)
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7310
Washington, DC  20530
Tel:  (202)616-8267
Fax:  (202) 616-8202

Attorneys for Respondents

10